Argued and submitted June 7, reversed and remanded with instructions
October 11, 1995

In the Matter of the Estate of
Craig Alden Burk, Deceased.

Sharon K. BURK,
*Appellant,*

*v.*

Charles BURK
and Naomi Burk,
*Respondents.*

(90CV2646PB; CA A83332)

903 P2d 914

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was Doris J. Brook.

Randolph Lee Garrison argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff, who was married to decedent, appeals from a judgment apportioning the entire proceeds of a wrongful death settlement to decedent's parents, defendants Charles and Naomi Burk. ORS 30.060; ORS 30.040. On *de novo* review,[1] we remand for entry of an amended judgment.

Decedent Craig Burk, who was 35 years old when he died, was a civil engineer. Plaintiff and decedent were married in 1982 and lived in Sacramento, California. Several years later, their relationship became strained and, in June 1989, they sought marriage counseling. In January 1990, plaintiff filed a petition to dissolve the marriage. However, decedent and plaintiff did not separate and continued living together as husband and wife. In late July 1990, decedent visited his parents, who lived in the state of Washington. Decedent, an avid cyclist, had planned to journey home on his bicycle. On his ride home, an intoxicated driver struck and killed him near Reedsport, Oregon.

Later, plaintiff was appointed personal representative of the California probate of decedent's estate. She brought an action in Oregon for wrongful death and settled that claim for $750,000. Plaintiff and defendants petitioned under ORS 30.040[2] for apportionment of the net proceeds of the settlement, which totaled about $483,000.

After hearing evidence, the trial court found that the marriage between decedent and plaintiff was "little more than a formality" and that it "would have been dissolved

---

[1] Defendants acknowledge that, under existing law, our standard of review is *de novo*. Nevertheless, they argue that our prior decisions holding that we review *de novo* the probate court's apportionment of proceeds of a wrongful death settlement, *Williams v. Cover*, 74 Or App 711, 713 n 2, 704 P2d 548 (1985), and *Oak v. Pattle*, 86 Or App 299, 301, 739 P2d 61, *rev den* 304 Or 149 (1987), have misconstrued the applicable standard of review. We decline to revisit our holding in those cases. *See* ORS 19.125(3); ORS 30.040 (court sits in probate when apportioning settlement).

[2] ORS 30.040 provides:

"Except when all beneficiaries otherwise agree, if settlement, with or without action, is effected and there is more than one beneficiary, the amount to be distributed to each beneficiary as recovery for loss described in ORS 30.020(2)(d) shall be apportioned by the probate court to each beneficiary in accordance with the beneficiary's loss."

The loss described in ORS 30.020(2)(d) is pecuniary loss and "loss of the society, companionship and services of the decedent[.]"

within a matter of months." It also found that decedent and plaintiff "were not partners and did not enjoy the positive benefits flowing from love, comfort and companionship of the other." The court found that decedent "enjoyed a close and loving relationship" with his parents and that their loss of society and companionship was so great that it could "only be fairly and reasonably compensated" by awarding the entire settlement to them. The court then apportioned the entire settlement proceeds to defendants.

On appeal, plaintiff assigns error to the trial court's failure to accept a factual determination by the California probate court in the context of appointing a personal representative for the estate that decedent's and plaintiff's marriage had not suffered a complete and final breakdown at the time of his death. We need not decide whether we would be precluded from making a finding different from the California court's finding because, based on our review of the record, we would make the same finding.

■■ Plaintiff also assigns error to the court's failure to apportion any part of the settlement proceeds to her or to the estate. The proceeds of a wrongful death claim settlement are distributed to the beneficiaries "as recovery for loss described in ORS 30.020(2)(d)," ORS 30.040, and the remainder is to be distributed to the beneficiaries under the laws of intestate succession of the state of decedent's domicile. ORS 30.030(4), (5). Under ORS 30.040, the recovery for the surviving spouse's and parents' loss described in ORS 30.020(2)(d), i.e., loss of society, companionship and services and pecuniary loss, must be apportioned "to each beneficiary in accordance with the beneficiary's loss." The trial court found that plaintiff had suffered neither pecuniary loss nor loss of society, companionship and services, and therefore did not apportion any of the settlement proceeds to her. It also concluded that defendants' loss of society and companionship could be compensated only by awarding the entire settlement recovery to them. Because all of the proceeds were distributed to defendants for losses described in ORS 30.020(2)(d), there were no proceeds left to distribute to the beneficiaries under ORS 30.030(5). The parties agree that defendants suffered a loss of society and companionship as a result of their son's death and should be compensated for that loss. The issue is whether

plaintiff also suffered a compensable loss of society and companionship or pecuniary loss for which she should be awarded a portion of the settlement proceeds.

There is conflicting evidence in the record about the extent of plaintiff's loss of society and companionship. Plaintiff and decedent were deeply religious and took their marriage vows very seriously. Neither one of them wished their marriage to end. However, after several years of marriage, their relationship became strained. Their communication deteriorated and they spent a good deal of their leisure time separately pursuing different activities and hobbies. In June 1989, they sought counseling, which concluded in September 1989. Their problems persisted and, in January 1990, plaintiff filed a petition for dissolution in order to prod decedent into addressing their problems. After plaintiff filed the petition, she and decedent continued living in the family home, slept in the same bedroom and maintained their normal sexual relations.

On the other hand, one of decedent's friends testified that, in December 1989, decedent told him that the marriage was over. Another friend said that decedent had told him the marriage had been troubled for two or three years. Two of decedent's siblings testified that in April and May of 1990, decedent said there would be no reconciliation between plaintiff and him. In May 1990, decedent named his parents as beneficiaries on his life insurance policy. Other friends, however, testified that in late June or early July of 1990, plaintiff and decedent seemed to be resolving their differences and that plaintiff did not want the marriage to end. Plaintiff testified that in June 1990, she and decedent discussed the possibility of further marriage counseling and, ultimately, reconciliation. Finally, there was other testimony that, in late July 1990, when decedent left to visit his parents, he again wanted to proceed with the divorce,[3] and that he was remaining in the couple's home only because he wanted to be awarded the house in the property division.

Taken as a whole, the evidence shows that, although decedent's and plaintiff's marriage had not suffered a complete and final break at the time decedent died, the marriage

---

[3] While decedent was en route to visit his parents, his attorney set a trial date for the dissolution proceeding.

had a perilous future. Their relationship was distant and there was a lack of communication. Our review of the record convinces us that it is more likely than not that decedent and plaintiff would have eventually dissolved their marriage. That does not necessarily lead to the conclusion that plaintiff did not suffer any loss of society and companionship as a result of decedent's death. Plaintiff and decedent continued to live together, sleep in the same bedroom and share in the household chores. They continued to care for each other, despite communication difficulties and disagreement over whether to have a family. On *de novo* review, we conclude that plaintiff's and decedent's lives were still intertwined, and that plaintiff suffered a measurable loss of society and companionship when decedent died. Although quantifying that loss is difficult, we conclude that plaintiff is entitled to $50,000 for her loss of society and companionship.

■ Plaintiff argues that she also suffered a pecuniary loss as a result of her husband's death. Her only argument is that he earned more money than she did, and that, even if there had been a divorce, she would have been entitled to receive some spousal support. Even if plaintiff is correct, the evidence is insufficient to establish the amount of any such loss.

■ Plaintiff also argues that the trial court erred in failing to apportion any of the settlement proceeds to the beneficiaries of the estate, in other words, in failing to distribute any of the proceeds according to California intestate succession law. Our determination of whether the trial court erred necessarily requires that we determine the extent of defendants' loss of society and companionship. Proceeds are distributed according to California intestacy law only if there are proceeds remaining after plaintiff and defendants have been compensated for their losses under ORS 30.020(2)(d). ORS 30.030(5). The trial court found, and we agree, that defendants did not suffer any pecuniary loss. Plaintiff concedes that defendants suffered a loss of society and companionship for which they are entitled to be compensated. The question is the value to be placed on that loss.

We find that, although decedent had not lived with defendants for many years, the relationship between decedent and defendants remained close and caring. Decedent

visited defendants nearly annually, and sent cards and talked to them on the telephone on special occasions such as birthdays and holidays. Defendants both felt a great sense of loss when decedent was killed. We conclude that each defendant is entitled to $100,000 to compensate them for their loss of society and companionship.

■   The remainder of the settlement proceeds "shall be distributed to the beneficiaries in the proportions prescribed under the laws of intestate succession of the state of decedent's domicile * * *." ORS 30.030(5). We turn then to the law of California, the state of decedent's domicile, to determine the proper distribution to the sole beneficiaries of decedent's estate, plaintiff and defendants.

Under California law, the distribution of assets of the estate is dependent on whether the property is community property or separate property of the decedent. If the property is community property, the surviving spouse receives the share that belongs to the decedent under California Probate Code section 100,[4] which is one-half of the community property. Cal Prob Code § 6401(a).[5] If the property is separate property of the decedent, the surviving spouse receives one-half of the property, if the decedent leaves no issue but leaves a parent or parents, the parents receive the remainder. Cal Prob Code § 6401(c);[6] Cal Prob Code § 6402(b).

---

[4] The other half belongs on the decedent's death to the surviving spouse. Cal Prob Code § 100.

[5] California Probate Code section 6401(a) provides:

"As to community property, the intestate share of the surviving spouse is the one-half of the community property that belongs to the decedent under Section 100."

[6] Section 6401(c) provides:

"As to separate property, the intestate share of the surviving spouse is as follows:

"(1)  The entire estate if the decedent did not leave any surviving issue, parent, brother, sister, or issue of a deceased brother or sister.

"(2)  One-half of the intestate estate in the following cases:

"* * * * *

"(B) Where the decedent leaves no issue but leaves a parent or parents * * *."

The issue then is whether the remainder of the settlement proceeds, after plaintiff and defendants are compensated for their loss of society and companionship, is community property or is considered decedent's separate property.

In order to determine the character of the proceeds, we must determine the type of damage the settlement proceeds are intended to compensate.[7] Under ORS 30.020(2),

"damages [for wrongful death] may be awarded in an amount which:

"* * * * *

"(b)  Would justly, fairly and reasonably have compensated the decedent for disability, pain, suffering and loss of income during the period between injury to the decedent and the decedent's death;

"(c)  Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate; [and]

"(d)  Justly, fairly and reasonably compensates the decedent's spouse * * * and parents for pecuniary loss and for loss of the society, companionship and services of the decedent[.]"

Because we have already determined the amount of plaintiff's and defendants' losses for damages provided under ORS 30.020(2)(d), the remainder of the settlement proceeds must necessarily provide compensation for decedent's pain and suffering and pecuniary loss to decedent's estate.[8]

---

[7] Under California law, the proceeds of a wrongful death action belong not to the estate, but instead belong to the individual beneficiaries. That is so because, in California, a wrongful death action does not serve to recover damages for loss that was suffered by the decedent or the decedent's estate; instead, damages for wrongful death include only:

"(1) The present value of future contributions from the decedent to his surviving heirs; (2) the value of any personal service, advice or training that probably would have been given; and (3) the value of the decedent's society and companionship." *Carr v. Pacific Telephone Company*, 26 Cal App 3d 537, 545, 103 Cal Rptr 120 (1972).

Thus, a wrongful death recovery would not in any way compensate for loss incurred by the decedent. In Oregon, a wrongful death action does include compensation for losses suffered by the decedent.

[8] The wrongful death complaint sought recovery for decedent's pain and suffering as well as for pecuniary loss to the estate.

Those damages are recoverable on account of decedent's personal injury, *i.e.*, they are to compensate his estate for loss suffered by him, as opposed to the compensation that the beneficiaries receive in the wrongful death action under ORS 30.020(2)(d). We conclude that we need not decide whether recovery for those losses constitutes community property or separate property because, under California law, the final distribution would be the same under either characterization.

California Family Code section 780 provides:

"Except as provided in Section 781 [providing that compensation for personal injuries is separate property if the cause of action arose after dissolution or while the spouses were living apart] and *subject to the rules of allocation set forth in Section 2603*, money and other property received or to be received by a married person in satisfaction of a judgment for damages for personal injuries, or pursuant to an agreement for the settlement or compromise of a claim for such damages, is community property if the cause of action for the damages arose during the marriage." (Emphasis supplied.)

Assuming that the cause of action for these damages arose during the marriage, the proceeds would, pursuant to section 780, be subject to allocation pursuant to California Family Code section 2603. That section provides:

"(a) 'Community estate personal injury damages' as used in this section means all money or other property received or to be received by a person in satisfaction of a judgment for damages for the person's personal injuries or pursuant to an agreement for the settlement or compromise of a claim for the damages, if the cause of action for the damages arose during the marriage but is not separate property as described in Section 781, unless the money or other property has been commingled with other assets of the community estate.

"(b) Community estate personal injury damages shall be assigned to the party who suffered the injuries unless the court, after taking into account the economic condition and needs of each party, the time that has elapsed since the recovery of the damages or the accrual of the cause of action, and all other facts of the case, determines that the interests of justice require another disposition. In such a case, the community estate personal injury damages shall be assigned

to the respective parties in such proportions as the court determines to be just, except that at least one-half of the damages shall be assigned to the party who suffered the injuries."

Under that section, even if the proceeds of the settlement are community property, the court is required to assign those proceeds to the injured party in the absence of a finding that the interests of justice require a different disposition. In this case, there are no circumstances that would require an assignment other than the one the statute requires. Accordingly, the proceeds would be assigned to the injured person, decedent, and would be considered his separate property.

Because the proceeds are assigned as decedent's separate property even if they are initially characterized as community property, the proceeds must be distributed pursuant to the separate property provision of California Probate Code sections 6401(c) and 6402(b). Plaintiff, as the surviving spouse, is entitled to receive one-half of the remaining proceeds. Cal Prob Code § 6401(c)(2)(B). The other half passes to defendants, as decedent's parents. Cal Prob Code § 6402(b).

Accordingly, we conclude that the trial court erred in allocating the entire settlement proceeds to defendants. On remand, the court shall enter an amended judgment allocating to plaintiff $50,000 for loss of society and companionship and to defendants $100,000 each for loss of society and companionship. The remainder shall be distributed one-half to plaintiff and the other one-half to defendants.

Reversed and remanded with instructions to enter amended judgment consistent with this opinion.